UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKIM RASHEED GIBSON,<br><br>    Petitioner,<br><br>    v.<br><br>RON RACKLEY, Warden,<br><br>    Respondent. | Case No. CV 12-7179-CAS (LAL)<br><br>**FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

   This Final Report and Recommendation[1] is submitted to the Honorable Christina A. Snyder, United States District Judge, under the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

**I.**

**PROCEEDINGS**

   On August 21, 2012, Hakim Rasheed Gibson ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"). On May

---

[1] This Court issues this Final Report and Recommendation to correct minor typographical errors. This Court's analysis remains unchanged.

24, 2013, Respondent filed an Answer to the Petition.[2] On July 9, 2013, Petitioner filed a Rebuttal to the Answer. Thus, this matter is ready for decision.

## II.

## PROCEDURAL HISTORY

On April 19, 2010, Petitioner was convicted in the Los Angeles County Superior Court of one count of sexual penetration by a foreign object,[3] one count of assault with intent to commit rape,[4] one count of second degree robbery,[5] and one count petty theft with a prior conviction.[6] (Clerk's Transcript ("CT") at 133-36; 189.) The jury also found true allegations that Petitioner used a dangerous and deadly weapon in the commission of the sexual penetration and the assault.[7] (CT at 85, 133-34.) In a bifurcated proceeding, the trial court found Petitioner had suffered two prior strike convictions. (CT at 146.) On January 12, 2009, the trial court sentenced Petitioner to a state prison term of 57 years to life. (CT at 146-47, 189-90.)

Petitioner appealed his conviction to the California Court of Appeal. (Lodgments 2-4.) On May 3, 2011, the California Court of Appeal reversed Petitioner's conviction for petty theft and reversed one of the strike prior findings, but otherwise affirmed the judgment. (Lodgment 5.)

Petitioner then filed a Petition for Review in the California Supreme Court. (Lodgment 6.) On July 20, 2011, the California Supreme Court denied review. (Lodgment 7.)[8]

## III.

## FACTUAL BACKGROUND

Because Petitioner challenges the sufficiency of the evidence, this Court has independently reviewed the state court record.[9] Based on this review, this Court adopts the

---

[2] Ron Rackley, Warden of Folsom State Prison where Petitioner is currently housed, is substituted as the Respondent. See Rule 2(a), Rules Governing § 2254 Proceedings; Fed. R. Civ. P. 25(d).
[3] Cal. Penal Code § 289(a)(1).
[4] Cal. Penal Code § 220.
[5] Cal. Penal Code § 211.
[6] Cal. Penal Code § 666.
[7] Cal. Penal Code §§ 12022, 12022.3, 12022.5, 12022.53.
[8] The California Supreme Court denied the Petition for Review without prejudice to any relief Petitioner might have been entitled after the state court decided People v. Dungo, S176886, People v. Gutierrez, S176620, People v. Lopez, S177046, and People v. Rutterschmidt, S176213. (Lodgment 7.)
[9] See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

factual discussion of the California Court of Appeal opinion in this case as a fair and accurate summary of the evidence presented at trial:[10]

> Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that on the night of July 27, 2006, Amber O. (Amber) consumed alcoholic beverages. She drove a two-door Ford Escort a few blocks but, feeling intoxicated, pulled to the side of the road to sleep. Amber reclined in the front passenger seat and slept. She was wearing a short, strapless dress and high-heel shoes. Her purse, containing her wallet, cash, credit cards, and a diamond necklace, was on the floor in front of her. Amber's jeans and her belt were in the back seat.
>
> Later that night, Amber awoke to find that appellant was seated to her right and her underwear had been removed. Appellant had wrapped Amber's belt around her neck and was choking her with it. Appellant tried to force Amber's legs apart and he digitally penetrated her vagina. Amber asked appellant what he was doing and told him to stop. Appellant, using profanity, told her that she better shut up or he would kill her. Amber heard appellant's zipper while she was struggling. She asked appellant to leave her alone and, hoping he would stop, told him that she had AIDS. Appellant, using profanity, again told Amber to shut up or he would kill her. Eventually, Amber partially freed herself and began kicking appellant. Appellant took Amber's purse and jeans, and fled.
>
> Neil D'Monte drove to the scene and saw Amber screaming for help. Amber told D'Monte that someone tried to rape her. D'Monte looked in the Escort and saw evidence of a major struggle. He called police and waited with Amber until police arrived. Amber was taken to the hospital with various injuries, including injuries consistent with something having strangled her neck. A nurse took a swab of, inter alia, Amber's left breast. On July 28, 2006, police lifted 22 latent fingerprints from the Escort. Police also obtained appellant's fingerprints and samples of his DNA.
>
> Amber identified her assailant as an African–American but did not identify appellant at trial. Wendy Hall, a Los Angeles Police Department (LAPD) forensic print specialist, compared the above 22 prints with appellant's fingerprints and testified to the effect that a palm print from each of appellant's hands was found on the outside passenger window of the Escort, and fingerprints from three fingers of each of his hands were found on the inside passenger window. Jody Hynds, a DNA identification expert, identified appellant's DNA in the DNA sample taken from the swab of Amber's left breast. Appellant presented

---

[10] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)). Thus, Ninth Circuit cases have presumed correct the factual summary set forth in an opinion of the California Court of Appeal under 28 U.S.C. §2254(e)(1). See, e.g., Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citations omitted); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

no defense witnesses.

(Lodgment 5 at 2-3.)

## IV.

## PETITIONER'S CLAIM

Petitioner raises the following claims for habeas corpus relief:

(1) The trial court violated Petitioner's right to confront witnesses by allowing a DNA laboratory supervisor to testify to results of testing conducted by other analysts (Petition at 10-15);[11]

(2) The prosecution presented insufficient evidence to support Petitioner's robbery conviction (Petition at 16-18); and

(3) The trial court violated Petitioner's rights to confront witnesses and present a defense by limiting his cross-examination of the prosecution's fingerprint expert (Petition at 19-22).[12]

## V.

## STANDARD OF REVIEW

**A.     28 U.S.C. § 2254.**

The standard of review that applies to Petitioner's claims is stated in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[11] Petitioner has attached 15 unnumbered pages of legal argument to the form petition. This Court refers to the page numbers as they appear on this Court's docketing system.

[12] Originally, Petitioner presented a fourth claim for relief, in addition to other subclaims to Claims One and Three. In response to Respondent's motions to dismiss on the basis of the unexhausted claims, Petitioner withdrew his unexhausted arguments. This Court now reviews Petitioner's remaining exhausted claims.

4

28 U.S.C. § 2254(d). If these standards are difficult to meet, it is because they were meant to be. As the United States Supreme Court stated in Harrington v. Richter,[13] while the AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings[,]" habeas relief may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with United States Supreme Court precedent. Further, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence.[14]

B.     **Sources of "Clearly Established Federal Law."**

According to Williams v. Taylor,[15] the law that controls federal habeas review of state court decisions under the AEDPA consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." To determine what, if any, "clearly established" United States Supreme Court law exists, a federal habeas court also may examine decisions other than those of the United States Supreme Court.[16] Ninth Circuit cases "may be persuasive."[17] A state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court decision has provided a clear holding relating to the legal issue the habeas petitioner raised in state court.[18]

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings under Williams.

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.[19] If a state

---

[13] 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011).
[14] 28 U.S.C. § 2254(e)(1).
[15] 529 U.S. 362, 412, 120 S. Ct. 1495, 146, L. Ed. 2d 389 (2000).
[16] LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000).
[17] Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).
[18] Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004); see also Carey v. Musladin, 549 U.S. 70, 77, 127, S. Ct. 649, 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).
[19] Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing Williams, 529 U.S. at 405-06).

court decision denying a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."[20] However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."[21]

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an <u>unreasonable</u> application' of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts.'"[22] Accordingly, this Court may reject a state court decision that correctly identified the applicable federal rule but unreasonably applied the rule to the facts of a particular case.[23] However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable" under <u>Woodford v. Visciotti</u>.[24] An "unreasonable application" is different from merely an incorrect one.[25]

Where, as here, the California Supreme Court denied a petitioner's claims without comment, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on these claims, in this case, the grounds the California Court of Appeal stated in its decision on direct appeal.[26]

## VI.
## DISCUSSION

**A.   DNA Evidence.**

   **1.   Background.**

In Claim One, Petitioner argues that the trial court violated his Sixth Amendment right to confront witnesses by allowing the prosecution's DNA expert to testify to test results that were

---

[20] <u>Williams</u>, 529 U.S. at 406.
[21] <u>Early</u>, 537 U.S. at 8.
[22] <u>Id.</u> at 11 (citing 28 U.S.C. § 2254(d)).
[23] See <u>Williams</u>, 529 U.S. at 406-10, 413.
[24] 537 U.S. 19, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).
[25] <u>Williams</u>, 529 U.S. at 409-10.
[26] See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); <u>see also</u> <u>Kennedy v. Lockyer</u>, 379 F.3d 1041, 1052 (9th Cir. 2004).

obtained from a nontestifying DNA analyst. (Petition at 10-15.) The California Court of Appeal accurately detailed the facts underlying Petitioner's claim:

> On December 8, 2008, during the People's presentation of the evidence and outside the presence of the jury, appellant indicated as follows. The People intended to call [DNA expert Jody] Hynds to testify. Hynds did not conduct the examination in this case but reviewed the work of the analyst who did. If Hynds "testif[ied] to anything that she . . . did not analyze," her testimony was hearsay violative of appellant's "right to due process to confront the witnesses against him."
>
> The prosecutor indicated Hynds was the supervisor of all analysts who conducted work on this case, she reviewed all the records, and was familiar with all procedures conducted. Hynds did the analysis of the data in this case, did all the comparisons, and her conclusions were found in the records. The prosecutor indicated Hynds "will be making reference to the reports that are contained therein, in which she did not personally do the work, but she supervised the work." The court overruled appellant's objection, stating "This is a matter of expert opinion as well" and that that was an exception.
>
> Later that day, Hynds testified before the jury as follows. Hynds was a technical manager at Forensic Testing Laboratory and had been employed there since October 2008. From January 2000 through September 2008, she had worked at Orchid Cellmark (OC), a private laboratory facility where she was a forensic supervisor and DNA analyst. OC was a private forensic testing laboratory which conducted DNA testing for the government, private individuals, and "defense testing." OC was accredited for DNA testing by several institutions, including the American Society of Crime Laboratory Directors. Hynds had testified as a DNA identification expert about 65 times.
>
> According to Hynds, there were four steps to developing a DNA profile, i.e., extraction, quantitation, polymerase chain reaction, and detection. Only 1 percent of a person's DNA was unique to that person, and 13 locations within the above 1 percent would be examined to produce a person's unique DNA profile. OC employed safeguards and controls to insure the integrity of the DNA sample and the reliability of test procedures.
>
> On October 20, 2006, OC received the evidence in this case from LAPD's scientific investigation division. It included a swab from Amber's left breast and a swab from the inside cheek of her mouth. DNA profiles were obtained from those items.
>
> Hynds brought to court with her OC's case file for this case. It bore an LAPD case file number. Hynds testified the file contained "all the bench notes, all the notes that were taken during the processing of this case." She also testified, "as we process the sample through, once the sample is in the tube, . . .

7

there's paperwork that's generated for all four steps and the data that is generated, actual DNA profiles and the reporting process, all that documentation is within my case file." (*Sic.*) All documents in the case file were prepared in the ordinary course of business at or near the time the actual analysis was done.

Hynds did not personally conduct the process to develop the DNA profiles from the swabs from Amber's mouth and left breast. There were a few places Hynds analyzed the data, but she and the six analysts whom she supervised worked as a team to obtain a DNA profile. Three of the four steps needed to develop a DNA profile, i.e., quantitation, polymerase chain reaction, and detection, were automated. Hynds testified that "All I did was, I analyzed a few of the samples, and once the DNA profiles were developed, I reviewed the controls to make sure they worked properly. I reviewed all the bench notes, and then I drew conclusions based on the comparison I made of the DNA profiles that were developed."

DNA genetic typing of a male was recovered from the swab from Amber's left breast. Hynds compared 13 locations in that genetic typing with 13 locations in genetic typing developed from appellant. There was a match at all 13 locations. Hynds later testified there was a match at 12 of the 13 locations, but appellant's genetic typing was found in all 13 locations. The probability of randomly selecting another person from among the Black population who would have genetic typing matching the 12 locations was 1 in 189.9 trillion; from among Caucasians, 1 in 5.16 quadrillion; from among the Southeast Hispanics, 1 in 5.176 quadrillion; from among the general Asian population, 1 in 7.278 quadrillion; and from among Southwest Hispanics, 1 in 15.28 quadrillion. Hynds calculated the statistics using a computer program issued by the Federal Bureau of Investigation. OC would "identify" a person as a donor of DNA when the probability of finding a donor other than that person was less than 1 in 6.6 trillion. Hynds "identified" appellant as the male contributor to the breast swab. People's exhibit No. 21, which Hynds testified was a copy of the "genetic typing table" that "show[ed] the genetic typings that were compared" was admitted into evidence without further objection.

(Lodgment 5 at 4-6 (footnotes omitted).)

### 2. **State Court Opinion.**

The California Court of Appeal denied Petitioner's claim, finding that the information relied on by Hynds in her testimony was nontestimonial under state law precedent and, thus, did not violate Petitioner's constitutional right to confront witnesses. (Lodgment 5 at 6-8.) The court further concluded that the information underlying Hynds's testimony was not admitted for the truth, but, rather, was admitted as the basis for Hynds's expert opinion. (Lodgment 5 at 8.) Finally, the state court concluded that, even assuming error, there was no prejudice in light of the

fingerprint evidence establishing Petitioner as the attacker.  (Lodgment 5 at 8-9.)

### 3. **Legal Standard.**

In <u>Crawford v. Washington</u>, the United States Supreme Court held that testimonial statements of witnesses absent from trial are admissible pursuant to the Sixth Amendment's Confrontation Clause only when:  (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness.[27]  <u>Crawford</u> also explained that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[28]

In <u>Melendez-Diaz v. Massachusetts</u>, the Supreme Court clarified the <u>Crawford</u> definition of "testimonial" evidence.[29]  The Court found that "certificates of analysis" showing the results of a forensic analysis on the contents of a substance were, in effect, affidavits of the state laboratory analysts testifying to the nature of a substance.[30]  The affidavits reported the weight of the seized bags and stated that the bags "have been examined with the following results:  The substance was found to contain: Cocaine."[31]  The certificates were certified by a public notary one week after the tests were performed.[32]  The Supreme Court stressed that the laboratory analysts did not testify at trial and the defendant did not know which tests were performed, whether any tests performed were routine, or whether the interpretation of any test results required the exercise of judgment of the use of skills that analysts may not have possessed.[33]  The <u>Melendez-Diaz</u> court found "affidavits were testimonial statements . . . and absent a showing the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial."[34]

In <u>Bullcoming v. New Mexico</u>, the Court determined whether the Sixth Amendment

---

[27] <u>Crawford v. Washington</u>, 541 U.S. 36, 59, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).
[28] <u>Id.</u> at 59 n.9.
[29] 557 U.S. 305, 310-11, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).
[30] <u>Id.</u>
[31] <u>Id.</u> at 308.
[32] <u>Id.</u>
[33] <u>Id.</u> at 320.
[34] <u>Id.</u> at 311.

precluded the admission of a forensic laboratory report signed by an analyst who certified to the defendant's blood-alcohol.[35] In the same document, the analyst further certified that he received the sealed blood sample intact and followed certain laboratory procedures.[36] At trial, the prosecution used the analyst's certification against the defendant, but the analyst, who became unavailable due to a personal matter, was not called to testify.[37] Instead, the prosecution called another analyst who was familiar with the laboratory's testing procedure.[38] The question to be decided was "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification – made for the purpose of proving a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."[39]

   In a five-to-four decision, with the fifth vote supplied by Justice Sotomayor, who wrote a separate concurrence, the court concluded that the Confrontation Clause did not permit this approach. A majority of the Court concluded that "if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness."[40] Accordingly, the Confrontation Clause did not permit the "surrogate" testimony approach taken in the trial court.[41]

   Recently, the Supreme Court reiterated that "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true."[42] Out-of-court statements, such as those contained in a laboratory report not prepared by the testifying expert, that are related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion rests, "are not offered for their truth and thus fall outside the scope of the Confrontation Clause."[43] Moreover, an out-of-court statement is

---

[35] --- U.S. ----, 131 S. Ct. 2705, 2710, 180 L. Ed. 2d 610 (2011)
[36] Id.
[37] Id. at 2710, 2711-12.
[38] Id.
[39] Id. at 2710.
[40] Id. at 2713.
[41] Id. at 2710, 2713.
[42] Williams v. Illinois, --- U.S. ----, 132 S. Ct. 2221, 2228, 183 L. Ed. 2d 89 (2012).
[43] Id.

testimonial if it has "the primary purpose of accusing a target individual of engaging in criminal conduct" and, usually, it involves a "formalized statement[] such as affidavit, depositions, prior testimony, or confessions."[44]

In <u>Williams</u>, an expert witness testified to the following: that Cellmark was an accredited laboratory; that the Illinois State Police ("ISP") occasionally sent forensic samples to Cellmark for DNA testing; that the ISP lab sent vaginal swabs taken from the victim to Cellmark and later received those swabs back from Cellmark; and that the Cellmark DNA profile matched a profile produced by the ISP lab from a sample of Williams's blood.[45] The lab report upon which the expert relied was not admitted into evidence. However, defense counsel objected to the foregoing testimony, and that the objection was overruled.[46] The Supreme Court found that, as "basis evidence" to explain the expert's opinion, the Cellmark report was not offered for its truth, and therefore, did not violate the Confrontation Clause.[47]

Alternatively, had the Cellmark report been introduced for its truth, the Court held that its admission would not violate the Confrontation Clause because the report was not a formalized statement whose primary purpose was accusing a targeted individual.[48] Applying an objective test in which the court looks "for the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the circumstances," the Court found that the primary purpose of the Cellmark report was to catch a dangerous rapist who was still at large, not to obtain evidence for use against [Williams], who was neither in custody nor under suspicion at that time."[49] Further, the Court found that no one at Cellmark could have possibly known that the profile that it produced would turn out to inculpate Williams, thus there was no prospect for fabrication and no incentive to produce anything other than a scientifically sound profile.[50]

**4.    <u>Analysis.</u>**

Hynds's testimony at Petitioner's trial did not implicate the concerns at issue in

---

[44] <u>Id.</u> at 2242.
[45] <u>Id.</u> at 2235.
[46] <u>Id.</u> at 2231.
[47] <u>Id.</u> at 2239-40.
[48] <u>Id.</u> at 2242.
[49] <u>Id.</u> at 2243.
[50] <u>Id.</u> at 2243-44 (citing <u>Michigan v. Bryant</u>, --- U.S. ----, 131 S. Ct. 1143, 1157, 179 L. Ed. 2d 93 (2011)).

Melendez-Diaz.  In Melendez-Diaz, the challenged testimony consisted of sworn affidavits authored by nontestifying witnesses.  Here, however, the reports of Hynds's subordinate analysts providing DNA profiles of collected evidence were not read into evidence as sworn affidavits.  In fact, the reports, standing alone, were not presented at trial at all.  Rather, Hynds was testifying about the results of DNA testing in a lab where she supervised the analysts who created the DNA profiles.  Hynds testified that, while she did not create all of the DNA profiles, she independently reviewed all the relevant data and authored her own report with independent interpretations of that data.  To the extent the DNA profiles created by the other analysts were discussed at all, it was in the context of the conclusions Hynds made based on those profiles.  In fact, Hynds's testimony emphasized her own expertise in DNA testing and her own conclusions regarding the data she reviewed.  Thus, Hynds's testimony about the test results performed by someone else is not akin to the affidavit-like certificates of analysis in Melendez-Diaz.  Unlike the affidavits in Melendez-Diaz that were "functionally identical to live, in court testimony," the DNA profiles here were similar to the reports at issue in Williams, serving as the basis for the opinion of a testifying expert.[51]

Accordingly, this Court finds that the California courts' denial of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on Claim One.

## B. Sufficiency of the Evidence.

### 1. Background.

In Claim Two, Petitioner argues the prosecutor presented insufficient evidence to support a conviction for second degree robbery.  Specifically, Petitioner argues that the evidence did not prove the victim was aware that a robbery occurred or that Petitioner was the robber.  (Petition at 16-18.)  Petitioner's claim relies on Amber's testimony at trial that after the attack "all of the

---

[51] See Flournay v. Small, 681 F.3d 1000, 1004-05 (9th Cir. 2012) (where witness "had not performed the crime lab's analysis by herself, she had participated personally in the work that was done" and qualified and testified as an expert witness "primarily based on reports she had peer reviewed."), cert. denied, --- U.S. ----, 133 S. Ct. 880, 184 L. Ed. 2d 688 (2013).

things that [she] had had in [her] car prior were gone," including her purse and a pair of jeans.  (2 RT at 132.)  However, Amber admitted that she did not see Petitioner "physically grab them and leave."  (2 RT at 132.)

### 2. **State Court Opinion.**

The California Court of Appeal denied Petitioner's claim, as follows:

> As to appellant's first claim, if the elements of robbery are otherwise satisfied, the fact the victim may not be aware of the robbery or the taking of property is irrelevant.  As to appellant's second claim, the jury reasonably could have concluded, given the relatively small size of Amber's car and the location of the purse and jeans inside the car, that those items were in plain view, appellant was aware of them before he assaulted her, and he did so to rape her and to rob her of those items.

(Lodgment 5 at 9 (citations omitted).)

### 3. **Legal Standard.**

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[52]  The United States Supreme Court announced the federal standard for determining the sufficiency of the evidence to support a conviction in Jackson v. Virginia.[53]  Under Jackson, "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."[54]  The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[55]  "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"[56]

When the factual record supports conflicting inferences, the federal court must presume,

---
[52] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).
[53] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).
[54] Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).
[55] Jackson, 443 U.S. at 319.
[56] Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 318).

even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the federal court must defer to that resolution.[57] Additionally, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."[58] Also, the federal court must refer to state law to define the substantive elements of the criminal offense and determine what evidence is necessary to convict on the crime charged.[59]

The Jackson standard applies to federal habeas claims attacking the sufficiency of the evidence to support a state conviction.[60] In addition, the AEDPA requires the federal court to "apply the standards of Jackson with an additional layer of deference."[61] The federal court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application' of Jackson and Winship to the facts of this case."[62]

**4.     Analysis.**

In California, "[r]obbery is the taking of personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property."[63] Petitioner does not argue that the evidence fails to prove these elements. Rather, Petitioner argues that Amber did not know of the taking at the time it occurred. On direct review of Petitioner's claim, the California Court of Appeal explained that a victim does not need to be aware of a taking in order for the act to meet the elements of robbery under California law. This Court is bound by this determination.[64] Accordingly, Petitioner cannot show the evidence was insufficient to support his conviction on the basis of Amber's lack of knowledge of the taking at the time it occurred.

---

[57] Jackson, 443 U.S. at 326.
[58] Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).
[59] Jackson, 443 U.S. at 324 n.16; Juan H., 408 F.3d at 1275.
[60] Juan H., 408 F.3d at 1274; see also Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).
[61] Juan H., 408 F.3d at 1274.
[62] Id. at 1275 & n.13.
[63] People v. Clark, 52 Cal.4th 856, 943 (2011).
[64] See Bradshaw v. Rickey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Moreover, the evidence that Petitioner was the robber was sufficient to support his conviction. Amber's belongings were in her car before the attack and were gone after Petitioner fled. (2 RT at 125-26, 132.) Although Amber was not able to identify Petitioner as her attacker (2 RT at 128, 144), the fingerprint and DNA evidence proved he was in Amber's car and had touched her person. (4 RT at 655, 659-60, 666-67, 690-702; 5 RT at 762-63, 772-74.) This circumstantial evidence strongly supported the jury's conclusion that Petitioner robbed Amber of her belongings.

Finally, Petitioner argues the DNA and fingerprint evidence should not be considered here because the evidence was not properly presented to the jury, as argued in Claims One and Three. However, this Court finds, herein, that Claims One and Three lack merit and that the forensic evidence was thus properly admitted. This evidence was thereby sufficient to support Petitioner's conviction.

Accordingly, this Court finds that the California courts' denial of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on Claim Two.

**C.    Fingerprint Evidence.**

    **1.    Background.**

In Claim Three, Petitioner argues the trial court violated his rights to confrontation and to present a defense by limiting his cross-examination of the prosecution's fingerprint expert. (Petition at 19-22.) The California Court of Appeal accurately detailed the factual and procedural background underlying Petitioner's claim:

> Prior to the December 2008 testimony of Hall, appellant's counsel indicated he wanted to elicit testimony from her regarding "the recent problems that have come to light over at the LAPD lab." The court indicated it had read the Los Angeles Times and "[knew] there [was] an issue," whether or not the extent of it had been accurately reported. The court stated appellant could ask Hall about "her proficiency testing[,] . . . the quality of her supervision [,] . . . how often these things are reviewed[,]" and "her own issues."
>
> Appellant's counsel said he wanted to ask Hall "about other issues within

the lab" and the court asked what they were.  Appellant's counsel stated, "from statements attributed to people who work for LAPD, there have been erroneous comparisons to exemplars that have been made by that lab."

The prosecutor posed a relevance objection and argued Hall had not had any problems and had no information on appellant's issue.  The court asked appellant's counsel if he had a response, and appellant's counsel replied no.  The court indicated appellant could examine Hall about her proficiency testing, the verification process, and any cases in which her evaluations were inaccurate or in which persons had been wrongly convicted based on an erroneous fingerprint identification made by her.  However, the court stated, "as far as other things with other people and other analysts, I think that's a 352 problem.  Because . . . it . . . would take undue time to go into that, so I will sustain an objection to that."

During trial, the court permitted appellant to examine Hall consistent with its ruling.  At the conclusion of Hall's testimony, the court posed to Hall clarifying questions which the jury had posed to the court concerning fingerprint identifications, and Hall answered the questions.  The jury did not, during deliberations, pose any questions to the court concerning fingerprint identification.

(Lodgment 5 at 9-10.)

### 2.   **State Court Opinion.**

The California Court of Appeal denied Petitioner's claim, as follows:

In resolving an Evidence Code section 352 issue, a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so.  All that is required is that the record demonstrates the trial court understood and fulfilled its responsibilities under section 352.  The trial court did not err or abuse its discretion by precluding, under Evidence Code section 352, appellant's proposed cross-examination of Hall on what was essentially a collateral matter.  Moreover, the application of ordinary rules of evidence, as here, did not violate appellant's constitutional rights to present a defense or to confrontation.

(Lodgment 5 at 11 (citations omitted).)

### 3.   **Legal Standard.**

The Sixth Amendment to the United States Constitution grants a criminal defendant the

16

right "to be confronted with the witnesses against him."[65] Moreover, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"[66] However, a defendant's rights to confront witnesses and to present a defense are not without limits. Both rights are subject to reasonable restrictions. To this end, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[67] Similarly, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[68] Ultimately, "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve."[69]

### 4. Analysis.

Here, the trial court was well within its discretion to prohibit the cross-examination about problems within the LAPD laboratory as reported by the Los Angeles Times. The prospective questioning based on the newspaper article invoked concerns about harassment of Hall based on problems she had not experienced and had no knowledge of, prejudice to the prosecution in light of the lack of corroboration of the information in the article, and confusion of the issues as the jury would not be given sufficient information regarding the alleged problems in the laboratory to adequately consider the issue. Moreover, the questioning would have been, at best, marginally relevant. The defense offered no proof that Hall had experienced any of the problems discussed in the newspaper article, and certainly did not prove that the problems occurred during the

---

[65] U.S. Const. amend. VI.
[66] Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).
[67] Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).
[68] Holmes v. South Carolina, 547 U.S. 319, 326, 126 S. Ct. 1727, 1732, 164 L. Ed. 2d 503 (2006).
[69] Michigan v Lucas, 500 U.S. 145, 151, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991) (internal quotation marks omitted).

17

review of the evidence in Petitioner's case.

Notably, Petitioner was allowed to question Hall regarding her own experience, expertise, and certification, as well as her findings and conclusions in the instant case. (4 RT at 706-23, 30-34.) This provided the defense with the opportunity for adequate, relevant cross-examination of the witness. Petitioner's rights to confrontation and to present a defense required no more.

Accordingly, this Court finds that the California courts' denial of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on Claim Three.

## VII.

## **RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: November 12, 2015

_____
HONORABLE LOUISE A. LAMOTHE
United States Magistrate Judge